UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| CARLOS ALANIZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:14-CV-215 |
| § | |
| SIRIUS INTERNATIONAL INSURANCE § | |
| CORPORATION, § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

Pending before the Court is the motion for summary judgment filed by Sirius International Insurance Corporation ("Defendant").[1] Carlos Alaniz ("Plaintiff") filed a response in opposition,[2] and Defendant filed a reply.[3] After considering the motion, responsive filings, record, and relevant authorities, the Court **GRANTS** Defendant's motion.

**I. Background**

The following facts are undisputed. Plaintiff owns rental properties as 1519 Orlando Street, 1520 Orlando Street, 1526 Orlando Street, and 1614 Phoenix Street in Edinburg, Texas, and there are four units on each property.[4] Immediately after the hailstorm in the spring of 2012, though Plaintiff was aware of the storm, he did not inspect his properties for damage, and his tenants never reported any damage to the properties.[5] He also did not see any damage to the surrounding area when he visited the properties after the storm.[6]

---

[1] Dkt. No. 8 ("Motion").
[2] Dkt. No. 10 ("Response"); Dkt. No. 11, Exhibits.
[3] Dkt. No. 12 ("Reply").
[4] Dkt. No. 11 ("Deposition") at pp. 6, 8.
[5] *Id.* at pp. 58, 82-83.
[6] *Id.* at pp. 84-85

During the summer of 2013, Plaintiff received a complaint from a tenant at 1519 Orlando Street about a leak from a damaged ceiling in the bathroom.[7] Shortly thereafter he received a similar complaint from another tenant on the same property.[8] However, Plaintiff never received complaints regarding roof leaks or water damage in any of the fourteen other units.[9] Instead of engaging a contractor or professional to assess the damage and identify the cause of the leaks, Plaintiff tried to assess the problems himself.[10] Plaintiff, who has absolutely no experience in construction or building renovations,[11] decided to use spackling compound to repair the bathroom ceilings, but he had to perform this "repair" several times because his efforts kept failing.[12] Even though the leaks were only occurring in the bathroom of two of the units at 1519 Orlando Street and seemed to be primarily caused by moisture, Plaintiff never explored alternative sources of the damage.[13]

A few weeks later, Plaintiff's neighbor suggested that the March 2012 hailstorm was the cause of the damage.[14] Though the neighbor offered to provide information on a contractor to assess the damage, Plaintiff never made an effort to secure a contractor.[15] Instead, a few months after the conversation with his neighbor, around September 2013, Plaintiff stopped at the office of his now attorneys to see if they could help him get a specialist to assess whether the damage was from the hailstorm.[16] However, no inspection occurred by the attorneys' hired contractor until February 24, 2014.[17]

---

[7] *Id.* at pp. 43-46, 78.
[8] *Id.*
[9] *Id.* at pp. 44-45.
[10] *Id.* at pp. 40-46.
[11] *Id.* at p.16.
[12] *Id.* at pp. 40-46.
[13] *Id.* at pp. 40, 43-44.
[14] *Id.* at pp. 70-74, 77.
[15] *Id.* at pp. 73-74.
[16] *Id.* at pp. 74-77.
[17] Dkt. No. 8, Exhibit B.

## II. The Policies, Notices and Complaint

Plaintiff contends that his attorney faxed a notice of claims for wind and hail damage regarding *all of his properties* to TAPCO on February 14, 2014,[18] though TAPCO does not have any record of receiving the notice.[19] Neither Defendant nor TAPCO responded to the notice.[20] Plaintiff then filed a lawsuit on March 27, 2014 in state court alleging breach of contract, Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") violations, unfair insurance practices, and breach of the duty of good faith and fair dealing against Defendant for improperly handling Plaintiff's claim of damage to his rental properties arising from the severe hailstorms in 2012.[21]

On the same day that the lawsuit was filed, Plaintiff sent a demand letter to Defendant for relief under the Texas Deceptive Trade Practices-Consumer Protection Act and the Texas Insurance Code with a request for over one million dollars in compensation.[22] The Court notes that the properties listed in the demand letter are "1619 Orlando, 1620 Orlando, 1626 Orlando, and 1614 Phoenix,"[23] when, in fact, Plaintiff's properties are 1519 Orlando, 1520 Orlando, 1526 Orlando, and 1614 Phoenix. Additionally, the second paragraph refers to "The Food Bank of the RGV,"[24] which is not a party to this case in any way.[25] Thought the complaint states that a written demand for payment and notice of the complaint pursuant to Texas Insurance Code Section 541 was sent to Defendant more than sixty days prior to filing the lawsuit,[26] the demand

---

[18] Deposition at pp. 24-25; Dkt. No. 10, Exhibit B.
[19] Motion at p. 2, fn 1; Dkt. No. 8, Exhibit E.
[20] The non-response is allegedly because they did not receive the notice in the first place (*Id.*).
[21] Dkt. No. 1, Exhibit 2 ("Complaint"). The Court notes that this complaint continually switches between "Plaintiff" and "Plaintiffs," indicating it was likely a boilerplate document.
[22] Dkt. No. 8, Exhibit B ("Demand Letter").
[23] *Id.* at p. 1.
[24] *Id.*
[25] The Court notes that these discrepancies, along with date changes within the document, indicate that the demand letter was boilerplate, as well.
[26] Complaint at p. 4.

letter was sent on the same day the complaint was filed,[27] placing Plaintiff in violation of the Texas Insurance Code notice requirement.

Plaintiff purchased commercial property insurance for the properties from Defendant covering the period from July 6, 2011 through July 6, 2013.[28] However, the first possible instance of communication with Defendant happened on February 14, 2014, *after* Plaintiff hired an attorney. Despite Plaintiff's contentions that he "did not know what to do"[29] about the damage, he secured insurance for all of the investment properties from the same individual who could have explained the policies or provided additional information for him.[30] Additionally, throughout the coverage period, Plaintiff had the policies in his possession, but he never reached out to Defendant for information about the policy details and does not recall reading the document.[31] In fact, before filing this suit Plaintiff never spoke with Defendant or TAPCO, Defendant's third-party administrator, nor did he receive written communication from either entity *regarding any issue* before filing the instant lawsuit.[32]

### III. Cautionary Note

The Court notes that Defendant has failed to comply with the Federal Rules of Civil Procedure with regard to the instant filings. Rule 7(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers."[33] Rule 10(b) in turn provides that "[a] party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of

---

[27] Dkt. No. 8, Exhibit B.
[28] Motion at p. 3; *see also* Dkt. No. 8, Exhibit C1.
[29] Deposition at p. 74-76
[30] *Id.* at p. 16.
[31] *Id.* at p. 23.
[32] *Id.* at pp. 20-24.
[33] FED. R. CIV. P. 7(b)(2).

circumstances."[34] Defendant's filings largely lack numbered paragraphs,[35] hindering the Court's reference to their arguments and evidence. Additionally, though Plaintiff uses numbered paragraphs in his response, the numbering for the first paragraph starts at six.[36] The parties are cautioned that future submissions should consistently number each paragraph to properly comply with the rules.

### IV. Summary-Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] A fact is "material" if its resolution could affect the outcome of the action,[38] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[39] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[40]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[41] In this showing, "bald assertions of ultimate fact" are insufficient.[42] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[43] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of

---

[34] FED. R. CIV. P. 10(b) (emphasis added).
[35] *See* Motion at pp. 1-12; Reply at pp. 1-7.
[36] *See* Response at ¶¶6-13.
[37] FED. R. CIV. P. 56(a).
[38] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[39] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[41] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[42] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).
[43] *See Celotex Corp.*, 477 U.S. at 323.

evidence.[44] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[45] This demonstration must specifically indicate facts and their significance, and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[46]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[47] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[48]

Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[49] Parties may cite to any part of the record, or bring evidence in the motion and response.[50] By either method, parties need not proffer evidence in a form admissible at trial,[51] but must proffer evidence substantively admissible at trial.[52]

Finally, because federal jurisdiction is invoked on the basis of diversity of citizenship,[53] this Court, Erie-bound, must adhere to grounds of relief authorized by the state law of Texas.[54]

---

[44] *See Id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[45] *Id.*
[46] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[47] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[48] *Id.*
[49] *See* FED.R.CIV. P. 56(e).
[50] *See* FED. R. CIV. P. 56(c).
[51] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[52] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial").
[53] *See* Dkt. No. 1 at ¶7.

Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[55]

## V. Analysis

There is one factual dispute at issue in this case: whether Defendant or TAPCO had notice of the insurance claims from Plaintiff's fax sent on February 14, 2014. However, this dispute is not material to the lawsuit because the date of actual notice by Defendant is not an essential element to any of Plaintiff's claims. Regardless of whether Defendant had notice on February 14, 2014 or on March 27, 2014 when this lawsuit was filed, all of the parties agree that there was no communication between Plaintiff and Defendant during that time. Resolving whether Defendant received Plaintiff's fax does not change the outcome of the analysis on any of the claims, therefore it is not a material fact. Thus, in considering all evidence in the light most favorable to Plaintiff, the Court will proceed from the position that Defendant received the February 14, 2014 fax through TAPCO.

The only other relevant dispute between the parties relates to the breach of contract claim, so the Court will begin the analysis with the three claims made in the complaint where there is general agreement by the parties: DTPA violations, unfair insurance practices, and breach of the duty of good faith and fair dealing.

   a. *DTPA Violations*

According to the complaint, Defendant violated the Texas Deceptive Trade Practices-Consumer Protection Act by making false representations to Plaintiff regarding his rights, remedies and obligations under the policy at issue and failing to disclose pertinent information to

---

[54] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[55] *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).

Plaintiff regarding the damages to his properties.[56] However, Plaintiff admitted that he never had any contact with Defendant at all, for any reason.[57] Therefore, since Defendant did not have *any* written or oral communications with Plaintiff, it is factually impossible that Defendant made *false* representations. Though Defendant never responded to the purported February 14, 2014 faxed notice of claims before the lawsuit was filed on March 27, 2014, this lack of communication can hardly be construed as "failing to disclose pertinent information" in accordance with the purposes of the DTPA, which are to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty."[58] It is clear to the Court that more than a five-week delay in response is required for Defendant's lack of communication to be actionable under the DTPA.[59] Therefore, Plaintiff's DTPA claims fail as a matter of law.

    b. *Unfair Insurance Practices*

Plaintiff alleges that Defendant engaged in unfair insurance practices under the Texas Insurance Code and Texas Administrative Code because Defendant failed to fully investigate the loss, failed to address all damages, concealed damages, failed to warn him of consequential damages to the property, ignored his pleas for help, refused to pay a valid claim, and attempted to enforce a full and final release after only paying a partial amount due.[60]

Given the fact that Plaintiff has had *absolutely no communication with Defendant and Defendant did not have an opportunity to undertake an investigation of the claim*, the allegations are completely meritless and make no sense in light of the facts. There was only a short period of

---

[56] Complaint at p. 5.
[57] Deposition at 20-22.
[58] TX BUS & COM §17.44.
[59] *See Tellez v. Encompass Ins. Co. of America*, 2004 WL 742912 at *3 (E.D. Tex)(requiring a showing of misrepresentation and more than mere nonperformance under a contract for DTPA claims to be actionable).
[60] Complaint at pp. 6-8; summarized in the Motion at p. 5.

time between the February 14, 2014 fax regarding the claims and the filing of this lawsuit on March 17, 2014. Even if Defendant received the fax on the date it was sent, five weeks is a short amount of time to fully investigate the loss and address all damages. Since Defendant never investigated the claim, it is factually impossible that they concealed damages, failed to warn Plaintiff of consequential damages to the property, refused to pay a valid claim, and attempted to enforce a full and final release after only paying a partial amount due. Additionally, Defendant's failure to respond to the faxed claims notice can hardly be construed as ignoring Plaintiff's pleas for help. If Defendant did not engage in any insurance practices at all, they could not engage in *unfair* insurance practices. Therefore, Plaintiff's claims under the Texas Insurance Code and Texas Administrative Code fail as a matter of law.

    c. *Breach of the Duty of Good Faith and Fair Dealing*

Plaintiff also alleges that Defendant, without any reasonable basis, "failed to conduct a reasonable and proper inspection of the claims and refused to rely on the true facts, resorting instead to producing faulty, incomplete and biased reasons to avoid paying valid claims," thus breaching its "duty to deal fairly and in good faith" with Plaintiff.[61] Of course, as noted several times before, Defendant never inspected the property and, therefore, made no representations regarding whether they would pay the claims. Since Defendant did not have an opportunity to take any steps toward inspection and resolution of the claim prior to engaging in litigation, they clearly did not make an *unreasonable* and *improper* inspection. Though Plaintiff claims the problem is that Defendant failed to conduct *any* inspection, this failure is at least in part because Plaintiff did not allow ample opportunity for an inspection to occur between the faxed claim and filing the lawsuit. Accordingly, Plaintiff's bad faith claims fail as a matter of law.

---

[61] Complaint at pp. 9-10.

*d. Breach of Contract*

The only remaining claim is Plaintiff's allegation of breach of contract. According to the complaint:

> PLAINTIFF'S [sic] purchased insurance policies with SIRIUS. PLAINTIFF'S properties were damaged by windstorm, hailstorm, and water damage, of which are covered under the insurance policies. SIRIUS has denied and/or delayed payment of PLAINTIFF'S covered claims. SIRIUS has no reasonable basis for denying, delaying, or failing to pay PLAINTIFF'S claims for damages. SIRIUS knew or should have known that there was no such reasonable basis to deny, delay, and failure [sic] to pay such claims. The conduct of SIRIUS was irresponsible, [sic] and unconscionable. SIRIUS took advantage of the PLAINTIFF'S lack of sophistication in insurance and construction matters to a grossly unfair degree. SIRIUS has, by its conduct, breached its contract with the PLAINTIFFS [sic]. The conduct of SIRIUS has proximately caused the injuries and damages to the PLAINTIFFS [sic].[62]

Since Defendant made no representations regarding Plaintiff's claims, they neither denied nor delayed payment, which is the complete basis of Plaintiff's allegations. Though the Court is inclined to conclude the analysis there, this claim further fails as a matter of law because Plaintiff did not notify Defendant of his claims "promptly" and "as soon as possible" as required under the terms of the contract.[63] The contract requires Plaintiff to provide Defendant with "prompt notice of the loss or damage," including a description of the property involved, and "as soon as possible" to provide "a description of how, when and where the loss or damage occurred."[64]

Because there is no clear authority regarding how to define "promptly" or "as soon as possible," the Court will evaluate Plaintiff's actions using a standard of reasonableness under the circumstances and a plain reading of the terms. The Court finds the situation in *Ridglea Estate Condominium Assoc. v. Lexington Insurance Co.*[65] to be analogous to the current situation. In that case, a condominium owner discovered hail damage to her roof several years after the hail

---

[62] *Id.* at p. 4.
[63] Dkt. No. 8, Exhibit C at p. 7.
[64] *Id.*
[65] 415 F.3d 474 (5th Cir. 2005).

storm occurred and gave notice to her insurer four months later.[66] However, the district court found the gap in time between the hail storm and the notice to the insurer to be an unreasonable amount of time. In response to the plaintiff's allegations that she was not aware of the damage, the Fifth Circuit stated that "[g]iven the magnitude of the 1995 storm…[the plaintiff] should have been aware of the likelihood that [the] roofs had suffered hail damage, and thus, should have had the roofs inspected by an expert at some reasonable time soon after the hailstorm occurred."[67] Given the magnitude of the 2012 hailstorm and Plaintiff's awareness that other properties sustained significant damage, the Court agrees that Plaintiff should have had the buildings inspected soon after the storm.

However, in construing the situation in the light most favorable to Plaintiff, the Court will consider the tolling of the contract provision placing a duty on Plaintiff to "promptly" file a claim to begin when Plaintiff had *actual* notice of property damage, which was in the summer of 2013. The moment that Plaintiff decided the roofs were so damaged that he need to undertake "spackling" repairs was the time when he should have taken steps to file claims with Defendant. He failed to take any action *even after* his neighbor suggested that the 2012 storm was the cause of the damage. Plaintiff retained counsel in September 2013, but the claim was not filed until *five months later.* This span in time of several months between when Plaintiff became aware of the damage and when the fax was sent cannot be defined as "prompt" or "as soon as possible" under any interpretation of the terms.

The Court does not find that Plaintiff's claims of ignorance as to the existence of contractors or how to file insurance claims serve to make the delay reasonable. As noted before, there were many sources Plaintiff could have explored for help regarding the damage in the

---

[66] *Id.* at 477.
[67] *Id.* at 477-478.

summer of 2013, but he actively chose not to pursue help from anyone – the insurance broker, his neighbor, or even Defendant. The Court does not expect Plaintiff to have a sophisticated level of knowledge regarding property damage and insurance practices, but the Court does expect Plaintiff to exercise due diligence and common sense. Ignorance is not an excuse for the extensive and unreasonable delay.

Though there is disagreement regarding whether the damage to the property was actually caused by the hailstorm in 2012, *even assuming that the damage was caused by the storm and actually occurred during the coverage period*, Plaintiff's fax on February 14, 2014 is insufficient to meet his obligation under the contract. If Plaintiff failed to comply with the policy notice requirements precedent to coverage, he breached the contract, relieving Defendant of their contractual duties.[68] Therefore, due to Plaintiff's failure to notify Defendant "promptly" and "as soon as possible" after he became aware of the damage in the summer of 2013, Defendant is entitled to judgment as a matter of law on the breach of contract claims.

## VI. Another Cautionary Note

Having determined that Plaintiff's claims do not survive summary judgment, the Court issues a cautionary word to counsel. It is clear that the state court pleading was filed with little regard for the facts of this case. The Court reminds counsel that Rule 11 of the Federal Rules of Civil Procedure requires that "factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support." Rule 13 of the Texas Rules of Civil Procedure similarly requires a basis in fact. Here, it is apparent that no factual basis existed for any of the claims brought.

---

[68] *See Flores v. Allstate*, 278 F. Supp.2d 810, 815 (S.D. Tex. 2003).

## VII. Holding

The Court, thus, cannot find an issue of material fact that could be resolved in favor of Plaintiff regarding any of the claims. Defendant is entitled to judgment as a matter of law on each of the claims. Accordingly, Defendant's motion for summary judgment is **GRANTED** and each of Plaintiff's claims is **DISMISSED with prejudice.** As a result, all of the pending motions are **MOOT.**

IT IS SO ORDERED.

DONE this 9th day of December, 2014, in McAllen, Texas.

                                                       Micaela Alvarez
                                       UNITED STATES DISTRICT JUDGE